UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: DONALD D. DITTO and | § | CASE NO 15-11163-tmd |
| KRISTIN K. DITTO | § | |
| DEBTORS | § | CHAPTER 7 |

MOTION OF THE UNITED STATES TRUSTEE TO DISMISS
CASE PURSUANT TO 11 U.S.C. § 707(b)

**This pleading requests relief that may be adverse to your interests.**

**If no timely response is filed within 21 days from the date of service, the relief requested herein may be granted without a hearing being held**

**A timely filed response is necessary for a hearing to be held.**

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Judy A. Robbins, United States Trustee for Region 7 ("UST"), through the undersigned counsel and files this *Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b)*. In support of the Motion the UST respectfully states as follows:

1. The Court has jurisdiction of this matter under 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and (b)(1), and 28 U.S.C. § 151. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B). This motion is filed pursuant to 11 U.S.C. § 707(b)(1) and (3) as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

2. Donald and Kristin Ditto ("Debtors") filed a voluntary petition for relief under Chapter 7 of Title 11, United States Code on September 2, 2015. Ron Satija was appointed Chapter 7 Trustee in this case and continues to serve in that capacity. The meeting of creditors held pursuant to Bankruptcy Code section 341 was concluded on October 1, 2015.

3. Debtors' Petition, Schedules D, E, and F and the testimony at a Rule 2004 exam conducted on December 22, 2015 show that Debtors' obligations are primarily consumer debts.

The scheduled nonpriority unsecured debt totals $357,142.20 on the last amended Schedule F (DE 36).

4. As required by 11 U.S. C. § 704(b)(1)(a), the UST reviewed Debtors' Schedules of Assets and Liabilities and Official Form 22A, commonly known as the "Means Testing Form" ("MTF"). Debtors' first filed MTF concluded that the presumption of abuse does not arise in this case because Debtors' income was below median. As discussed below, Debtors did not separate business expenses from personal expenses, and in so doing, under reported their income. When properly calculated, the evidence will show this case is above median. However, the UST calculates that the large mortgage obligation ($4,097 per the Schedule J, DE 1) would negate the presumption arising under § 707(b)(2).

5. The UST and Debtors agreed to extend the time to file a Motion under § 707(b) or a Complaint under § 727 to February 1, 2016 so that Debtors could provide information related to their income and their expenses. The Agreed Order was entered at DE 28. A second extension of time was granted to file a § 707(b) motion and/or a § 727 until April 11, 2016. This Motion is filed within the extended period and is timely.

6. The UST's calculations indicate that if properly disclosed, Debtors' current monthly income annualized within the 6 month period required in the MTF is at least $96,319.08[1]. Debtors' MTF discloses $46,526.04, which is below the applicable median income of $71,973. *See*, Form 22A-1, line 12b in DE 1.

7. The evidence supports a finding that Debtors underreported their income by deducting as

---

[1] Based on the total of gross deposits and credits from the business bank account for March 2015 through September 2015, $147,960.03, divided by 6 months, leaves average gross monthly income of at least $24,660. Even using Debtors' statement of monthly ordinary and necessary operating expenses on the MTF of $16,633.41, which the evidence will show is overstated, monthly net income is at least $8,026.

business expenses items that were for their benefit, such as mortgage payments, insurance payments, computer and internet expenses, utilities, tax payments, etc. By taking these personal expense payments from the business account and including them as "ordinary and necessary operating expenses" when calculating the net monthly income from the business, Debtors misrepresented their income on both the MTF and on Schedules I and J. Debtors amended this misrepresentation with respect to the Schedule I disclosure by filing an amended Schedule I (DE 35) indicating income higher by approximately $1,500 per month, but the UST shows that the evidence demonstrates that the Debtors' actual personal income is even higher, based on the bank statements provided by Debtors.

8.  This case should be dismissed as a chapter 7 based on abuse under the totality of circumstances. The Court can convert the case to a chapter 13 if Debtors qualify on this motion if Debtors consent. Even in cases where the presumption of abuse does not arise or is rebutted, this Court may nevertheless dismiss a chapter 7 case if the totality of the circumstances of the debtor=s financial situation demonstrates abuse. 11 U.S.C. § 707(b)(3)(B).

9.  Section 707(b)(3) provides, in pertinent part:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) does not arise or is rebutted, the court shall consider:
>
> (B) whether the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

10. As summarized in *In re Camp*, 416 B.R.304 (Bankr. E.D. Tex), when looking at the totality of the circumstances, the following factors[2] are often considered:

---

[2] The factors considered are similar in most jurisdictions. The *Camp* decision is the most comprehensive the

3

a. Whether the debtor could pay a substantial portion of his debts from future income in a hypothetical Chapter 13 case;

b. Whether the bankruptcy petition was filed due to sudden illness, calamity, disability, or unemployment;

c. Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

d. Whether the debtor's proposed family budget is reasonable;

e. Whether the debtor is seeking to reaffirm a large amount of secured debt to the detriment of unsecured creditors;

f. Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect his true financial condition;

g. Whether the debtor has a stable source of income;

h. Whether the debtor is eligible to file a Chapter 13 case;

i. Whether there are state remedies or private negotiations that the debtor can invoke to ease his financial predicament;

j. Whether the debtor's expenses can be reduced without depriving the debtor of basic necessities...

See *In re Kelly,* 841 F.2d 908, 914-915 (9th Cir.1988) (adopting an "ability to pay" test for substantial abuse); *In re Green,* 934 F.2d 568, 572 (4th Cir.1991) (adopting a "totality of the circumstances" test for substantial abuse); *In re Krohn,* 886 F.2d 123, 126-127 (6th Cir.1989) (adopting a "totality of the circumstances" test for substantial abuse). *See also In re Cortez,* 457 F.3d 448, 456 (5th Cir.2006) (applying a totality of the circumstances test for substantial abuse); *In re Walton,* 866 F.2d 981, 984-985 (8th Cir.1989) (following the Ninth Circuit's reasoning in *Kelly* ); *In re Fitzgerald,* 155 B.R. 711, 716 (Bankr.W.D.Tex.1993) (agreeing with *Kelly* that the

---

undersigned could find at the time of filing. A portion of these are the same factors considered in determining totality of circumstances in this district as summarized and set forth in *In re Fergason*, 295 B.R. 96 (Bankr. S.D. Tex. 2003); *In re Watkins*, 216 B.R. 394, 396 (Bankr. W.D. Tex. 1997) (both decided when the standard was still

4

primary focus of the court's inquiry should be a debtor's ability to pay); *In re Watkins,* 216 B.R. 394 (Bankr.W.D.Tex.1994) (adopting the "totality of the circumstances" test with an emphasis on ability to repay).

11. Debtors have a mortgage payment of $4,097 per month, which exceeds the applicable IRS standard for a family of their size by over 40%. Ms. Ditto testified at a Rule 2004 exam that they tried to sell their home[3] and it didn't sell. Ms. Ditto also testified that they hoped to keep the home. Debtors are seeking to retain the home to the detriment of their unsecured creditors.

12. After filing for bankruptcy and scheduling three horses, Debtors donated one of the horses to a church camp *See* DE 22, Debtors' response to the trustee's objection to exemptions. Disposing of non exempt property of the estate, regardless of the value, indicates a lack of good faith, a separate factor in the consideration of dismissal for abuse.

13. Debtors' business operation, conducted through a closely held limited liability company, is the primary source of income for the family. Ms. Ditto testified that income in 2000 was $2,000,000, but has decreased since then. Based on Debtors' bank statements,[4] they had deposits and other credits totaling at least $357,394.34 in 2015. From this stream of income, Debtors pay personal and business expenses[5].

14. Debtors' general ledger and bank statements provided to the UST indicate that certain of the scheduled debt is being paid as a business expense. These include payments to Dell Financial, Chase, American Express, AT&T, USBank, PNC Mortgage, the Schneiders, Capital

---

substantial abuse rather than just abuse).

[3] The Schedules reflect that the home is situated on 5.65 acres of land, plus an adjoining 9.25 acre lot in Marble Falls Texas. While the Debtors scheduled ownership of horses, but there is no indication of ranching or farming activity on the property.

[4] The bank statements used in this calculation were for the accounts at Security, BVA, and Frost.

[5] The UST did a specific analysis of the bank statements provided by Debtors for 2015. For the months of April 2015 through August 2015, the UST calculates the average business expenses were $12,365.50 per month. This is

One, Bank of America, and at least one unscheduled debt, for property taxes. Schedule H indicates that there is not a co debtor, such as Debtors' company, for any of this debt, indicating that these are all personal expenses. Also, Debtors have taken some of these clearly personal expenses as expense deductions on Schedule J, or "double dipped" on some expenses. These include life and health insurance ($392 per month). Debtors have overstated their business expenses and understated their income and have not accurately represented their finances. When properly categorized as business and personal, the UST will show that Debtors have the ability to pay creditors[6].

14. As shown on the schedules, some of the debt scheduled is very old debt. Based on the amended Schedule F (see DE 36), it appears that $150,000 of the unsecured debt relates to a 1995 line of credit with Chase. Another is a 2001 unspecified type of claim by Grayber, for $65,000. Other aged debt scheduled is a 1998 debt to Chase for $8,978 and a 2007 debt to BBO Liquidation in the amount of $40,990.32. The BBO Liquidation debt is scheduled as a judgment, which Ms. Ditto testified was to recover alleged preferential payments. The testimony indicates that the bankruptcy of BBO resulted in the inability to pay Grayber. Given the bankruptcy and age of the claim, it is not certain whether there are defenses to payment or whether this debt has been written off by a bankruptcy estate. The present case is a no asset case, so no creditors have filed a claim. In addition to the Chase debt described above, there is a third Chase debt in the amount of $27,983, which is almost five years old. In each instance, it appears there may be

---

$4,300 per month less than what Debtors represented on the Means Test (DE 1).
[6] Based on an analysis of the bank statements provided by Debtors for 2015, the UST's best analysis is that net income to Debtors averaged $8,454. From that, average monthly expenses that are at least initially not disputed would be $5,254. It is possible that Debtors could prove that additional monthly expenses are legitimately reasonable business expenses, but the UST estimates with the evidence available that Debtors would have in excess of $1,000 per month to pay creditors. This amount would pay about 17% of the scheduled unsecured debt over 5 years.

alternative remedies to deal with the scheduled debt, based in large part on the age of the debt. Accordingly, legitimate creditors may receive an even higher dividend if this case were filed (or converted to) a chapter 13 case.

15. Based on information regarding their finances contained in the schedules and statements on file, as well as information provided to the UST pursuant to subpoena, Debtors' gross income is approximately $8,400 per month, compared with the $6,315 reflected in their last amended Schedule I (docket entry 35). The discrepancy between these calculations appears to be because of expenses that the business pays on behalf of Debtors, which should be included as income to them. However, since these expenses are deducted as "business expenses" before being detailed on Schedule J, the true expenses are not disclosed in the bankruptcy documents. Because Debtors have disregarded the distinction between the corporate entity and themselves individually in the budgets, the schedules and statements do not represent Debtors' true financial situation.

16. The largest individual expense claimed by Debtors is the $4,097 per month for their home mortgage payment. If only this expense were reduced[7], with no other adjustment to the income or expenses scheduled by Debtors, there would be $2,228 of monthly net income, based on Debtors' schedules as filed. This amount would pay 37% of the scheduled unsecured debt through a hypothetical five year chapter 13 plan. If the older debt described above in paragraph 14 is barred by limitations or otherwise disallowed, the return to unsecured creditors would increase. This significant ability to pay creditors something is a basis to dismiss this case.

17. Creditors should not have to bear the burden of Debtors' desire to stay in a home they claim they can no longer afford. To the extent that Debtors' household and personal expenses are paid through the business, the budget provided in the bankruptcy documents do not provided

7

disclosure of Debtors' actual expenses to determine whether they are reasonable or not.

18. Based on the factors described above, the UST urges the Court to dismiss this case, or enter an order converting the case on this motion, if Debtors indicate their consent and qualification to be in a chapter 13.

WHEREFORE, PREMISES CONSIDERED, the United States Trustee respectfully requests that, pursuant to § 707(b)(1) and (3), this Court dismiss this case and to grant such other and further relief to which the United States Trustee may justly be entitled.

Respectfully submitted,

JUDY A. ROBBINS
UNITED STATES TRUSTEE

By: */s/ Deborah A. Bynum*
Deborah A. Bynum
Trial Attorney
SBT No. 03556250
903 San Jacinto Blvd., Room 230
Austin, Texas 78701
Telephone: (512) 916-5328 / Fax: (512) 916-5331
Deborah.A.Bynum@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that I forwarded a true and correct copy of the foregoing United States Trustee's *Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b)* and proposed order by prepaid first class mail and by electronic means for all Pacer system participants to the parties listed on Debtors' Mailing Matrix on this the 11th day of April, 2016.

*/s/ Deborah A. Bynum*
Deborah A. Bynum

---

[7] The UST reserves the right to argue that other expenses, once disclosed, are unreasonable and unnecessary.

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0542-1<br>Case 15-11163-tmd<br>Western District of Texas<br>Austin<br>Mon Apr 11 15:09:01 CDT 2016 | U.S. BANKRUPTCY COURT<br>903 SAN JACINTO, SUITE 322<br>AUSTIN, TX 78701-2450 | ADT security<br>3696 Ulmerton Rd. Ste. 200<br>Clearwater, FL 33762-4237 |
| ARA<br>P.O. Box 4099<br>Austin Texas 78765-4099 | ARC<br>P.O. Box 26726<br>Austin Texas 78755-0726 | AT&T<br>P.O. Box 2268<br>Southsate, MI 48195-4268 |
| Aetna<br>145 Bradford Dr.<br>West Berlin, NJ 08091-9269 | American Express<br>P.O. Box 650448<br>Dallas, Texas 75265-0448 | BBO Liquidation Corp.<br>Evelyn J. Meltzer<br>1313 North Market Street<br>Wilmington, Delaware 19801-6101 |
| Bank of America<br>Attn: Correspondence Unit/CA6-919-02-41<br>P.O. Box 5170<br>Simi Valley, CA 93062-5170 | Bank of America<br>P.O. Box 650070<br>Dallas, Texas 75265-0070 | CTRMA<br>P.O. Box 16777<br>Austin Texas 78761-6777 |
| Capital One Retail<br>P.O. Box 30253<br>Salt Lake City, UT 84130-0253 | Capital One Retial<br>P.O. Box 60504<br>City of Industry, CA 91716-0504 | Chase Card<br>P.O. Box 15298<br>Wilmington, DE 19850-5298 |
| Chase Line of Credit<br>P.O. Box 659732<br>San Antonio, Texas 78265-9732 | Cleo and Madeline Schneider<br>674 E. Walnut St.<br>La Grange, Texas 78945-2836 | Dell Childrens<br>P.O. Box 204301<br>Dallas, Texas 75320-4301 |
| (p)DELL FINANCIAL SERVICES<br>P O BOX 81577<br>AUSTIN TX 78708-1577 | Emerus<br>8686 New Trails Dr. Ste. 100<br>The Woodlands, Texas 77381-1176 | Emerus<br>P.O. Box 4869 #448<br>Houston, Texas 77210-4869 |
| Grayber Electric<br>4601 Cambridge Rd.<br>Fort Worth, Texas 76155-2233 | Ic Systems Inc<br>P.O. Box 64378<br>Saint Paul, MN 55164-0378 | Intuit Credit<br>2700 Coast Ave.<br>Mountain View, CA 94043-1140 |
| PNC Bank, National Association<br>c/o BDFTE, LLP<br>15000 Surveyor Blvd Suite 100<br>Addison, TX 75001-4417 | PNC Mortgage<br>3232 Nemark Dr.<br>Miamisburg, OH 45342-5433 | PNC Mortgage<br>P.O. Box 1820<br>Dayton, OH 45401-1820 |
| Pediatric IC Systems<br>P.O. Box 88087<br>Chicago, IL 60680-1087 | Richard E. Greenblum<br>100 Congress Avenue, Ste. 210<br>Austin Texas 78701-2744 | Security State Bank<br>7626 Lohman Ford Rd.<br>Lago Vista Texas 78645-4788 |

| | | |
|---|---|---|
| TX Tag<br>12719 Burnet Road<br>Austin Texas 78727-4207 | Ted Hollen<br>The Casey Professional Building<br>20624 F.M. 1431, Ste. #9<br>Lago, Vista Texas 78645-4652 | Travis County<br>c/o Kay D. Brock<br>P.O. Box 1748<br>Austin, TX 78767-1748 |
| Travis County Tax Office<br>5501 Airport Blvd.<br>Austin, TX 78751-1410 | (p)US BANK<br>PO BOX 5229<br>CINCINNATI OH 45201-5229 | United States Trustee - AU12<br>United States Trustee<br>903 San Jacinto Blvd, Suite 230<br>Austin, TX 78701-2450 |
| Verizon Wireless<br>500 Technology Drive<br>Suite 550<br>Weldon Spring, MO 63304-2225 | Amber Vazquez Bode<br>1004 West Ave<br>Austin, TX 78701-2019 | Donald D. Ditto<br>28207 Turner Ranch Rd.<br>Marble Falls, TX 78654-3416 |
| Kristin K. Ditto<br>28207 Turner Ranch Rd.<br>Marble Falls, TX 78654-3416 | Ron Satija<br>P.O. Box 660208<br>Austin, TX 78766-7208 | |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

| | | |
|---|---|---|
| Dell Financial Services<br>P.O. Box 6403<br>Carol Stream, IL 60197-6403 | U.S. Bank<br>P.O. Box 2188<br>Osh Kosh, WI 54903 | (d)US Bank<br>US Bank Bankruptcy Dept<br>P.O. Box 5229<br>Cincinnati, OH 45201 |

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | |
|---|---|
| (d)Cleo and Madeline Schneider<br>674 E. Walnut St.<br>La Grange, Texas 78945-2836 | End of Label Matrix<br>Mailable recipients 40<br>Bypassed recipients 1<br>Total 41 |